SEAN P. REIS (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

*Attorneys for Plaintiff and the putative class*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

JAMES LAGARDE, individually and on behalf of all others similarly situated,

*Plaintiff*,

*v.*

SUPPORT.COM, INC. d/b/a SAMMSOFT, a Delaware corporation,

*Defendant*.

Case No. 3:12-cv-00609-JSC

**FIRST AMENDED COMPLAINT FOR:**

1. **Fraudulent Inducement;**
2. **Breach of Express Warranties;**
3. **Breach of Implied Warranties;**
4. **Breach of Contract; and**
5. **Unjust Enrichment.**

**DEMAND FOR JURY TRIAL**

**CLASS ACTION**

Plaintiff James LaGarde brings this First Amended Class Action Complaint ("Complaint") against Defendant Support.com, Inc. ("Support.com" or "Defendant") based upon Defendant's practice of defrauding consumers through the design and sale of certain of its software products. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1. Support.com is one of the largest and fastest growing developers of computer utility software in the United States. Support.com markets and sells a variety of products that it claims will increase the speed, performance, and stability of a consumer's personal computer ("PC"), fix security and privacy risks, remove harmful errors, and improve Internet speeds.

2. Unfortunately for consumers, the method Support.com uses to induce them to purchase at least one of these software products—Advanced Registry Optimizer ("ARO")—as well as the software itself, is undeniably fraudulent.

3. Through its marketing materials, and the software itself, Support.com represents that ARO is capable of identifying, reporting and repairing a wide range of PC errors, privacy and security threats, and other computer problems. To demonstrate ARO's value, Support.com allows users to download the software and perform a "free diagnostic" scan, which supposedly detects "errors" corresponding with the harmful computer problems the software is designed to fix. After the user performs the free scan, ARO offers to "fix" 100 of the detected errors for free, but requires the user to purchase the full, registered version, of the software to fully "fix" the remaining problems.

4. However, as detailed herein, Support.com intentionally designed ARO to misrepresent and exaggerate the existence and severity of these detected errors, as well as the overall "system" and "security status" of the PC, *regardless of the actual condition of the computer* to induce the consumer to purchase the software.

5. For those users who purchase ARO outright (without first performing a free scan), Support.com's misrepresentations lull consumers into a false sense of security that ARO is actually conducting the beneficial tasks listed above—that the software is honestly and accurately detecting and removing or repairing credible errors and security threats. In truth, ARO's real value, stripped of these artifices, is much less than reflected in its purchase price.

6. Support.com holds itself out as a reputable industry leader in developing software aimed to protect consumers' computers. Because average consumers lack the requisite technical expertise to understand the underlying functionality of Support.com's software, they trust Support.com to honestly describe the utility of its products, and design its software to truthfully report errors. Support.com betrayed that trust, and as a result, millions of consumers have been tricked into paying for its ARO software.

**PARTIES**

7. Plaintiff James LaGarde is a natural person and citizen of the State of Maryland.

8. Defendant Support.com, Inc. is a Delaware corporation with its headquarters and principal place of business located at 1900 Seaport Boulevard, 3rd Floor, Redwood City, California 94063. Support.com does business throughout the State of California and the United States.

**JURISDICTION AND VENUE**

9. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendant, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

10. Venue is proper in this District under 28 U.S.C. § 1391(a) because Defendant resides in this District and the injuries of which Plaintiff complains arose here. Venue is proper because Defendant transacts significant business in this District, including soliciting consumer business and entering into consumer and business transactions.

## FACTUAL BACKGROUND

### I. A Brief Overview of Support.com

11. Support.com is a self-proclaimed leader in the online technical support industry. Support.com offers a variety of computer repair services and products that purportedly allow Support.com to remotely repair consumers' PCs.

12. In addition to providing these services, Support.com develops and sells a variety of "privacy, utility, and security software for the PC" under its "Sammsoft" brand name, including the software product at issue in this lawsuit—Advanced Registry Optimizer.

13. Support.com—doing business as Sammsoft—boasts that over ten million (10,000,000) users worldwide have downloaded ARO.[1]

### II. Support.com Deceptively Markets its Advanced Registry Optimizer Software

14. Support.com heavily advertises and otherwise promotes its ARO software through sponsored marketing on the Internet, which is displayed in search engine results and targeted advertisements on websites.

15. Through its advertisements, websites, and statements contained within the software, Support.com uniformly misrepresents the utility of ARO. Specifically, Support.com asserts that ARO will detect and remove harmful computer errors, increase the performance of computers, detect security and privacy threats, and increase the speed of the user's Internet connection.

16. Put simply, Support.com claims that ARO scans the user's PC, accurately reports existing errors and other threats—which purportedly correspond with the problems Defendant represents that the software will detect—and then corrects these issues.

17. In reality, and as explained below, Support.com intentionally designed ARO to artificially inflate errors detected, mischaracterize innocuous computer issues as harmful, and misrepresent the errors and the overall system and security status of a user's PC. Moreover, the software cannot and does not actually perform the beneficial tasks as represented by Support.com.

---

[1] About Sammsoft, http://www.sammsoft.com/ (last visited April 27, 2012).

**III. Support.com Designed Advanced Registry Optimizer to Artificially Inflate Errors, Exaggerate the Severity of Computer Problems, and Misrepresent the Overall Security Status of Consumers' PCs to Induce Them to Purchase the Software**

18. After a user downloads and installs ARO, the software automatically begins "scanning" the user's PC, supposedly detecting harmful errors, and evaluating the "security status" of the computer.

19. Upon completion of the free scan, the user is presented with a graphical depiction of the computer's supposed condition in the form of a large meter, containing colored sections representing varying levels of the computer's "junk" status—ranging from bad (red) to good (green). Additionally, a separate display box appears on the screen representing the "Security Status" of the computer, ranging from "CRITICAL" to "GOOD."

20. The user is then given the option to "fix" 100 of the harmful items detected by ARO for free, but the software prompts the user that in order to "fix" the remaining errors and fully "clean the rest of your system," the user must purchase the full, registered version of the software. Accompanying this text, and to further entice the consumer, ARO displays the supposed benefits of using the software as described above.

21. In light of Support.com's representations about and within the software, the average consumer who views the results of an ARO scan reasonably believes that the software truthfully and accurately identifies computer errors, security/privacy risks, and other system problems. Unfortunately, that is not the case.

22. Through his attorneys, Plaintiff has engaged a computer forensic expert to examine the functionality of ARO. The expert uncovered that Support.com deceptively designed Advanced Registry Optimizer to invariably report, in an extremely menacing manner, that the computer's "Junk Status" is high, inflate the number of "Registry Status" errors that exist, characterize harmless files as significant problems, and display that the "Security Status" is "CRITICAL"—without performing any credible diagnosis of the computer's condition.

23. Ostensibly these practices lead the consumer to believe that ARO is properly performing the operations represented by Support.com, when in fact, the software is not using any

reliable metrics to evaluate the individual's PC. This is done in an effort to induce the user to purchase the full version of Advanced Registry Optimizer to "fix" these problems.

24. By and through the deceptive practices described herein, Support.com has profited, and continues to profit, by defrauding consumers into believing that their computers are severely damaged and/or at risk, and that a full version of ARO is necessary to "fix" errors and other problems. This induces the consumer to purchase Advanced Registry Optimizer because he or she reasonably believes that the software is performing the beneficial tasks as represented by Support.com.

## IV. Plaintiff James LaGarde's Experience

25. In or around April 2011, Plaintiff James LaGarde performed an Internet search for software that would enhance the performance of his computer. LaGarde clicked on a link for ARO purporting to offer a free trial of the software, including a free diagnostic scan of his computer. LaGarde downloaded and installed the trial version of ARO, and performed the free diagnostic scan.

26. After completing the scan, the software represented that LaGarde's computer's "Security Status" was "CRITICAL," and that its "Junk Status" was high. After clicking a "Fix Errors" button to fix the reported problems, a display box informed LaGarde that only some of the errors would be fixed with the trial version of the software, and that he must purchase a full version to fix all of the detected issues.

27. However, as discussed above, ARO did not actually detect that LaGarde's computer's security status was critical, or that junk files were harming his computer. Rather, because ARO was designed to always return these results, LaGarde was misled into believing that his computer was at-risk, and that he needed to pay for ARO to repair it.

28. Thus, in reliance on the representations made by the software regarding the health and performance of his PC, LaGarde clicked on the "Buy & Download" button within the software and was directed to a website where he paid and Support.com accepted $29.95 for the purchase of

ARO.

29. But for Defendant's misrepresentations displayed within the Advanced Registry Optimizer software—namely that (i) the software would accurately detect, report and repair harmful errors and other problems, (ii) that his computer's "Junk Status" was high, (iii) that his computer had several hundred "Registry Status" errors, and (iv) that his computer's "Security Status" was "CRITICAL"—LaGarde would not have agreed to purchase ARO.

**CLASS ALLEGATIONS**

30. **Definition of the Class:** Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of himself and a class (the "Class") of similarly situated individuals, defined as follows:

> All individuals and entities in the United States and its territories that paid a fee to purchase Support.com Inc.'s Advanced Registry Optimizer software.

Excluded from the Class are (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

31. **Numerosity:** The exact number of Class members is unknown to Plaintiff at this time, but on information and belief, Support.com has sold its software to thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified from within Support.com's records.

32. **Typicality:** Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the Class sustained damages as a result of Support.com's uniform wrongful conduct during transactions with Plaintiff and the Class.

33. **Adequate Representation:** Plaintiff will fairly and adequately represent and protect

the interests of the Class and has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Support.com has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff nor his counsel have any interest adverse to those of the other members of the Class.

34. **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members. Those questions include, but are not necessarily limited to:

a) whether Defendant intentionally designed the Advanced Registry Optimizer software to artificially inflate, exaggerate and/or misrepresent the existence of errors and other problems on a user's computer;

b) whether the Advanced Registry Optimizer software actually repairs computers errors and problems, or improves computer speed and functionality;

c) whether Defendant's conduct described herein constitutes a breach of express warranties;

d) whether Defendant's conduct described herein constitutes a breach of implied warranties;

e) whether Defendant's conduct described herein constitutes fraudulent inducement;

f) whether Defendant's conduct described herein constitutes a breach of contract; and

g) whether Defendant unjustly received and/or continues to receive money as a result of its conduct described herein, and whether under principles of equity and good conscience, Defendant should not be permitted to retain those monies.

35. **Superiority:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all Class members is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

36. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Support.com has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, and making final injunctive relief appropriate with respect to the Class as a whole. Support.com's policies challenged herein apply and affect members of the Class uniformly and Plaintiff's challenge of these policies hinges on Support.com's conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiff.

37. Plaintiff reserves the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned in discovery.

**FIRST CAUSE OF ACTION**
**Fraudulent Inducement**
**(On Behalf of Plaintiff and the Class)**

38. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

39. As described with particularity herein, Support.com has used, and continues to use,

marketing and sales tactics it knows or reasonably should know are false and misleading.

40. As an inducement for Plaintiff and the other members of the Class to purchase its ARO software, Defendant affirmatively and uniformly represented to them that the software would accurately scan their computers for harmful errors and other problems, increase the speed and stability of their computers, and protect the privacy of their computers. Furthermore, within the software itself, Support.com affirmatively represented that the overall health of Plaintiff's and the Class's computers was poor.

41. The above affirmative representations were, in fact, false. In particular, the software did not accurately identify and report errors and other problems present on Plaintiff's and the Class's computers, inasmuch as the ARO's initial scan was designed to and did exaggerate and misrepresent the existence and severity of any such errors.

42. Likewise, because the errors and problems identified by the software either did not actually exist or were not as severe as the software represented them to be, the software did not and could not repair such errors or actually improve the performance of Plaintiff's and the Class's computers, as Support.com represented that it would.

43. Support.com knew that its representations regarding ARO's utility and functionality, as well as the software's representations about the condition of Plaintiff's and the Class's computers were fabricated.

44. Support.com intended that Plaintiff and the other members of the Class would similarly rely upon its misrepresentations about the utility of the ARO software, as well as the software's misrepresentations regarding the health of their computers, by purchasing and continuing to use ARO.

45. Plaintiff and the other members of the Class reasonably relied upon those misrepresentations inasmuch as they believed that the software was designed to accurately identify, report and repair errors and other problems on their computers; they reasonably believed that the software had, in fact, accurately identified and reported errors and other problems on their

computers; and/or they remitted payment to Support.com for the purchase of a full version of the Advanced Registry Optimizer software in order to repair the purported errors and other problems "detected" on their computers.

46. The utility of a consumer product is a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception or fraud related to the utility of a product is materially misleading. Accordingly, Support.com's misrepresentations regarding ARO's utility were materially misleading.

47. Plaintiff and the other members of the Class would not have purchased the ARO software if not for Defendant's misrepresentations regarding its utility and/or the misrepresentations within the software itself regarding the health of their computers. Further, if not for Defendant's in-software misrepresentations, Plaintiff and the Class would have discontinued their use of ARO and requested a refund.

48. As a result of Defendant's fraudulent conduct described herein, Plaintiff and the Class suffered injury in the form of the monies they paid Defendant for the purchase of the full version of the Advanced Registry Optimizer software.

49. Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
**Breach of Express Warranties**
**Pursuant to U.C.C. § 2**
**(On Behalf of Plaintiff and the Class)**

50. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

51. Licenses for the Advanced Registry Optimizer software are "goods" within the meaning of the Uniform Commercial Code § 2, including but not limited to Cal. Com. Code § 2313.

52. Pursuant to the Uniform Commercial Code § 2, including but not limited to Cal. Com. Code § 2313, the sale of Defendant's Advanced Registry Optimizer software was

accompanied by an express warranty of merchantability created by affirmations of facts and promises made by Support.com.

53. The express warranty of merchantability provided by Defendant included affirmations of fact and promises that its software would accurately identify, report and repair PC errors and other problems, increase computer speed, performance and stability, remove harmful errors, and "clean up" hard drives. In actuality, Defendant fraudulently designed its software to falsely identify and/or exaggerate the presence of harmful errors, and misrepresented the overall health and security of Plaintiff's and the Class's computers in an effort to induce them to purchase a full version of the software. Defendant's misrepresentations were made in a substantially identical manner to Plaintiff and the other members of the Class.

54. Plaintiff and the Class uniformly and reasonably relied upon these affirmations and promises when purchasing Defendant's Advanced Registry Optimizer software, in that Plaintiff and the Class reasonably believed that they were purchasing software that would accurately identify, report and repair PC errors, security and privacy risks, increase computer speed, performance and stability, remove harmful errors, and "clean up" hard drives. As such, Defendant's affirmations and promises were part of the money-for-software bargain.

55. But for Defendant's affirmations and promises, Plaintiff and the Class would not have purchased the Advanced Registry Optimizer software.

56. Defendant breached its express warranties by intentionally designing the Advanced Registry Optimizer software to falsely identify, artificially inflate, and/or exaggerate the presence of harmful errors, and the overall security of a consumer's computer.

57. Defendant's breach directly injured Plaintiff and the Class because they purchased a product of diminished value—software that does not accurately detect, report and repair errors and other problems on a user's computer.

58. At all times, Defendant was on notice that it had breached its express warranties made to Plaintiff and the Class, inasmuch as Defendant intentionally designed the ARO software to

falsely identify and/or exaggerate the presence of harmful errors, and the overall health and security of their computers, and therefore, knew that the software did not meet its warranties to the contrary.

59. Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available, together with costs and reasonable attorneys' fees, in an amount to be determined at trial.

**<u>THIRD CAUSE OF ACTION</u>**
**Breach of Implied Warranties**
**Pursuant to U.C.C. § 2**
**(On Behalf of Plaintiff and the Class)**

60. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

61. Licenses for the Advanced Registry Optimizer software are "goods" within the meaning of the Uniform Commercial Code § 2, including but not limited to Cal. Com. Code § 2314.

62. Pursuant to Uniform Commercial Code § 2, including but not limited to Cal. Comm. Code § 2314, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Goods are considered merchantable if they "are fit for the ordinary purposes for which such goods are used" and "conform to the promises or affirmations of fact made on the container or label if any."

63. A contractual relationship between Defendant, on the one hand, and Plaintiff and the other members of the Class, on the other, was formed when Defendant offered to sell and Plaintiff and the Class agreed to purchase the full version of the Advanced Registry Optimizer software.

64. By selling the ARO software, Defendant impliedly represented to Plaintiff and the Class that the software would be fit to accurately detect, report and repair computer errors and problems. The software's display screens described herein provided similar representations regarding the its utility.

65. Defendant breached the implied warranty of merchantability because, in actuality, ARO is not fit to and does not accurately detect, report and repair computer errors and problems.

Rather, Support.com intentionally designed ARO to misrepresent and/or exaggerate the existence of errors and other problems on users' computers.

66. Moreover, when consumers attempt to "clean" their PCs using the Advanced Registry Optimizer software, the software does not actually remedy the problems identified because they have been exaggerated or wholly fabricated and therefore, necessarily cannot be "cleaned" or "fixed."

67. As a proximate result of Defendant's conduct and its resulting breach of the implied warranty of merchantability, Plaintiff and the other members of the Class have suffered damages.

68. Defendant had actual knowledge that the ARO software breached the implied warranty of merchantability because Defendant intended that the software would not function as advertised. For the same reasons, Defendant had actual or constructive notice of the damages suffered by Plaintiff and the Class.

69. Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available, together with costs and reasonable attorneys' fees, in an amount to be determined at trial.

**FOURTH CAUSE OF ACTION**
**Breach of Contract**
**(On Behalf of Plaintiff and the Class)**

70. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

71. Plaintiff and each member of the Class, on the one hand, and Defendant, on the other, entered into valid and enforceable agreements, whereby Defendant agreed to sell, and Plaintiff and the Class agreed to purchase, software that would accurately identify, report and repair legitimate computer errors and other problems found on Plaintiff's and the Class's computers, as well as improve the overall health, functionality and privacy of those computers.

72. Plaintiff and the Class paid, and Support.com accepted, the purchase price of the software products at issue. Therefore, Plaintiff and the Class performed their obligations under the

contracts.

73. The actual utility of the software was a material term in the agreements at issue.

74. Defendant expressly and/or impliedly agreed to provide Plaintiff and the Class a product that would accurately identify, report and repair errors and other problems on their computers.

75. Defendant further expressly and/or impliedly agreed to carry out its obligations under the agreement in good faith and fair dealing.

76. Defendant materially breached its agreements with Plaintiff and the Class by providing them software that it intentionally designed to misrepresent and exaggerate the existence of errors and other problems on their computers and that ultimately did not repair any purported errors, or otherwise have the utility Defendant represented it to have.

77. As a direct and proximate result of Defendant's breach of its contractual relationships with Plaintiff and the Class, Plaintiff and the Class suffered damages, including in the form of the monies they paid to purchase ARO.

78. Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks an award of the maximum damages available in an amount to be determined at trial.

**FIFTH CAUSE OF ACTION**
**Unjust Enrichment (in the alternative to Breach of Contract)**
**(On Behalf of Plaintiff and the Class)**

79. Plaintiff incorporates by reference the foregoing allegations 1-69 as if fully set forth herein.

80. Count V is expressly brought in the alternative to Count IV (breach of contract).

81. If the Court finds Plaintiff's and the Class's contracts with Defendant invalid or unenforceable, Plaintiff and the members of the Class may be left without any adequate remedy at law.

82. Plaintiff and the Class members each conferred a benefit upon Defendant in the form of the monies they paid to Defendant for the purchase of the ARO software.

83. Defendant appreciates and/or has knowledge of the benefits conferred by Plaintiff and the Class.

84. Under principles of equity and good conscience, Defendant should not be permitted to retain the monies belonging to Plaintiff and the Class that it unjustly received as a result of its unlawful and deceptive conduct alleged herein.

85. Plaintiff and the Class members each suffered financial loss as a direct result of Defendant's conduct described herein.

86. Accordingly, Plaintiff, on behalf of himself and the other members of the Class, seeks restitution and disgorgement of all monies unlawfully retained by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff James LaGarde, on behalf of himself and the Class, respectfully requests that this Court enter an Order:

A. Certifying this case as a class action on behalf of the Class defined above, appointing James LaGarde Class Representative, and appointing his counsel Class Counsel;

B. Declaring that Defendant's actions, as set out above, constitute violations of the Uniform Commercial Code § 2, including but not limited to California Commercial Code §§ 2313 and 2314, as well as fraudulent inducement, and breach of contract, or in the alternative, unjust enrichment;

C. Awarding damages, including actual, statutory and punitive damages where applicable, to Plaintiff and the Class in an amount to be determined at trial;

D. Awarding injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and the Class, including, *inter alia*: (i) prohibiting Defendant from engaging in the wrongful and unlawful acts described herein; (ii) requiring Defendant to disclose and admit the wrongful and unlawful acts described herein; and (iii) requiring Defendant to fully disclose the true nature of its software products now and in the future;

E. Awarding restitution and disgorging all monies unlawfully retained by Defendant as

a result of its conduct described herein;

F. Awarding Plaintiff and the Class their reasonable litigation expenses and attorneys' fees;

G. Awarding Plaintiff and the Class pre- and post-judgment interest, to the extent allowable; and

H. Awarding such other and further relief as the Court deems equitable and just.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues so triable.

Respectfully submitted,

Date: April 27, 2012

**JAMES LAGARDE**, individually and on behalf of all others similarly situated,

By: /s/ Benjamin H. Richman
One of Plaintiff's Attorneys

SEAN P. REIS (SBN 184044)
sreis@edelson.com
EDELSON MCGUIRE, LLP
30021 Tomas Street, Suite 300
Rancho Santa Margarita, California 92688
Telephone: (949) 459-2124
Facsimile: (949) 459-2123

JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON MCGUIRE, LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

**CERTIFICATE OF SERVICE**

I, Benjamin H. Richman, an attorney, hereby certify that on April 27, 2012, I served the above and foregoing ***First Amended Class Action Complaint***, by causing true and accurate copies of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system on this, the 27th day of April 2012.

/s/ Benjamin H. Richman
Benjamin H. Richman