1   SEAN P. REIS (SBN 184044)
    sreis@edelson.com
2   EDELSON MCGUIRE, LLP
    30021 Tomas Street, Suite 300
3   Rancho Santa Margarita, California 92688
    Telephone: (949) 459-2124
4   Facsimile: (949) 459-2123

5   JAY EDELSON (Admitted *Pro Hac Vice*)
    jedelson@edelson.com
6   RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
    rbalabanian@edelson.com
7   BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
    brichman@edelson.com
8   CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
    cgivens@edelson.com
9   EDELSON MCGUIRE LLC
    350 North LaSalle Street, Suite 1300
10  Chicago, Illinois 60654
    Telephone: (312) 589-6370
11  Facsimile: (312) 589-6378

12  *Attorneys for Plaintiffs and the putative class*

13                  **UNITED STATES DISTRICT COURT**

14                  **NORTHERN DISTRICT OF CALIFORNIA**

15  JAMES LAGARDE and TIM BATCHELOR,           Case No. 3:12-cv-00609-JSC
    individually and on behalf of all others similarly
16  situated,                                  **SECOND AMENDED COMPLAINT
                                                FOR:**
17                      *Plaintiffs*,
                                                  1.  **Fraudulent Inducement;**
18          v.                                    2.  **Breach of Express Warranties; and**
                                                  3.  **Breach of Contract.**
19  SUPPORT.COM, INC. d/b/a SAMMSOFT, a
    Delaware corporation, and AOL INC., a       **DEMAND FOR JURY TRIAL**
20  Delaware corporation,
                                                **CLASS ACTION**
21                      *Defendants*.

22

23

24

25

26

27

28

Plaintiffs James LaGarde and Tim Batchelor bring this Second Amended Class Action Complaint ("Complaint") against Defendants Support.com, Inc. ("Support.com") and AOL Inc. ("AOL") (collectively, "Defendants") based upon Defendants' practice of defrauding consumers through the design and sale of certain of their software products. Plaintiffs, for their Complaint, allege as follows upon personal knowledge as to themselves and their own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## NATURE OF THE ACTION

1.    Support.com is one of the largest and fastest growing developers of computer utility software in the United States. Support.com markets and sells a variety of products that it claims will increase the speed, performance, and stability of a consumer's personal computer ("PC"), fix security and privacy risks, remove harmful errors, and improve Internet speeds.

2.    Unfortunately for consumers, the method Support.com uses to induce them to purchase at least two of these software products—Advanced Registry Optimizer ("ARO") and AOL Computer Checkup[1] ("Computer Checkup") (collectively, the "Software")—as well as the actual applications, is undeniably fraudulent.

3.    Through their marketing materials and the Software itself, Defendants represent that the Software is capable of identifying, reporting, and repairing a wide range of PC errors, privacy and security threats, and other computer problems. To demonstrate the Software's purported value, users are allowed to download the Software and perform a "free diagnostic" scan, which supposedly detects "errors" corresponding with the harmful computer problems the Software is designed to fix. After using the free scan[2], the Software offers to "fix" the detected errors through purchase of the full, registered version of the Software.

---

[1]    Support.com develops the software that AOL then re-brands as "AOL Computer Checkup."

[2]    Computer Checkup users are offered a 30-day free trial period to use the software, whereas ARO users are offered a one-time free diagnostic scan. In both cases, the premise is the same—induce the users into believing that their computer systems are afflicted with harmful computer errors and offer to "fix" these problems with either one time (in the case of ARO) or ongoing (in the case of Computer Checkup) purchase of the software.

4.      However, as detailed herein, Support.com intentionally designed ARO and Computer Checkup to misrepresent and exaggerate the existence and severity of detected errors, as well as the overall status of the PC, *regardless of the actual condition of the computer,* to induce the consumer to purchase the Software.

5.      For those users who purchase ARO or Computer Checkup outright (without first performing a free scan), Defendants' misrepresentations lull consumers into a false sense of security that the Software is actually conducting the beneficial tasks listed above—that the Software is honestly and accurately detecting and removing or repairing credible errors and security threats. In truth, the Software's real value, stripped of these artifices, is much less than reflected in its purchase price.

**PARTIES**

6.      Plaintiff James LaGarde is a natural person and citizen of the State of Maryland.

7.      Plaintiff Tim Batchelor is a natural person and citizen of the State of Indiana.

8.      Defendant Support.com, Inc. is a Delaware corporation with its headquarters and principal place of business located at 1900 Seaport Boulevard, 3rd Floor, Redwood City, California 94063. Support.com does business throughout the State of California and the United States.

9.      Defendant AOL Inc. is a Delaware corporation with its headquarters and principal place of business located at 770 Broadway, New York, New York 10003. AOL does business throughout the State of California and the United States.

**JURISDICTION AND VENUE**

10.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), because (a) at least one member of the putative class is a citizen of a state different from Defendants, (b) the amount in controversy exceeds $5,000,000, exclusive of interest and costs, and (c) none of the exceptions under that subsection apply to this action.

11.      Venue is proper in this District under 28 U.S.C. § 1391(a) because Support.com resides in this District and the injuries of which Plaintiffs complain arose here. Venue is proper

because Defendants transact significant business in this District, including soliciting consumer business and entering into consumer and business transactions.

<b>FACTUAL BACKGROUND</b>

**I.      A Brief Overview of Support.com**

12.     Support.com is a self-proclaimed leader in the online technical support industry. Support.com offers a variety of computer repair services and products that purportedly allow Support.com to remotely repair consumers' PCs.

13.     In addition to providing these services, Support.com develops and sells a variety of "privacy, utility, and security software for the PC" under its "Sammsoft" brand name, including one software product at issue in this lawsuit—Advanced Registry Optimizer (ARO).

14.     Support.com also develops the Computer Checkup software, and it permits AOL to rebrand, market, and sell this product itself.

**II.     Support.com and AOL Deceptively Market the Software**

15.     Defendants heavily advertise and otherwise promote the Software through sponsored marketing on the Internet, which is displayed in search engine results and targeted advertisements on websites.

16.     Through their advertisements, websites, and statements contained within the software, Support.com uniformly misrepresents the utility of ARO. Specifically, Support.com asserts through its website that ARO is designed to:

- "Find and fix errors";
- "Clean up junk files";
- "Check your PC's status with one click";
- "[Help provide] faster system speeds";
- "A more stable system"; and
- "Improved system response time".

17.     AOL similarly misrepresents the utility of Computer Checkup through its websites.

Specifically, AOL asserts that Computer Checkup is designed to:

- "Speed[] system startup";

- "Reduce[] error messages";

- "Increase[] [PC] performance";

- "Help your computer run faster"; and

- "Keep your PC optimized and secure".

18.     Put simply, Support.com and AOL claim that ARO and Computer Checkup, respectively, scan the user's PC, accurately reports existing errors and other threats—which purportedly correspond with the problems Defendants represent that the software will detect—and then corrects these issues.

19.     In reality, and as explained below, Support.com intentionally designed the Software to artificially inflate errors detected, mischaracterize innocuous computer issues as harmful, and misrepresent the errors and the overall system and security status of a user's PC. Moreover, the Software cannot—and does not—actually perform the beneficial tasks as represented by Defendants.

**III.    Support.com Designed ARO and Computer Checkup to Artificially Inflate Errors, Exaggerate the Severity of Computer Problems, and Misrepresent the Overall Status of Consumers' PCs to Induce Them to Purchase the Software.**

20.     Once downloaded and installed, the free trial version of both ARO and Computer Checkup direct the user to run a diagnostic scan of his or her PC.

21.     Upon completion of the scan, the Software displays a list of errors and other problems supposedly detected on the user's computer.

22.     ARO users are then presented with a graphical depiction of the computer's supposed condition in the form of a large meter containing colored sections that represent varying levels of the computer's "junk" status—ranging from bad (red) to good (green). Additionally, a separate display box appears on the screen representing the "Security Status" of the computer—ranging from "CRITICAL" to "GOOD."

23.     ARO next provides users the option to "fix" 100 of the harmful items detected by ARO for free, but the software prompts the users that in order to "fix" the remaining errors and fully "clean the rest of your system[s]," the users must purchase the full, registered version of the software. Accompanying this text, and to further entice the consumers, ARO displays the supposed benefits of using the software, as described above.

24.     For Computer Checkup users, the errors and problems purportedly identified by the software are accompanied by graphical depictions, such as checkmarks, yellow yield signs, and large bolded "x" marks, and are listed under various categories, including "security," "clean[liness]," and need for "optimization."  These warning signs are meant to indicate that there are errors in need of immediate repair, that they are slowing down the computer, or that they are negatively impacting the computer's privacy and security.

25.     Directly below the list of reported errors, Computer Checkup displays corresponding status levels ranging from "poor" to "good," supposedly detailing the condition of the computer's security, optimization, and memory utilization. Next, Computer Checkup offers to "fix" the detected errors in order to improve the stated condition of the computer system. But this whole process is smoke and mirrors.

26.     The average consumer who views the results of an ARO or Computer Checkup scan reasonably believes that the Software truthfully and accurately identifies computer errors, security/privacy risks, and other system problems. Unfortunately, that is not the case.

27.     Through their attorneys, Plaintiffs engaged a computer forensics expert to examine the functionality of ARO and Computer Checkup. The expert uncovered that Support.com deceptively designed the Software to invariably report, in a uniformly menacing manner, that harmful computer errors are afflicting the PC's condition, without any real, credible diagnosis of the system's condition. Ostensibly, these practices lead the consumer to believe that the Software is properly performing the operations represented by Defendants, when, in fact, the Software does not use any reliable metrics to diagnose the status of the individual's PC.

28.     Irrespective of the particular errors that the Software represented existed on their computers, Plaintiffs and each member of the Class relied upon those uniformly false representations and believed that there were significant errors and/or other problems negatively impacting their computers' performance and security. In further reliance upon those representations, Plaintiffs and the Class members either purchased the ARO software, or in the case of Computer Checkup, continued using the software beyond the free trial period and were charged a fee.

29.     Because the errors reported by the Software either never actually existed, or were severely exaggerated, Plaintiffs and the Class received a product worth significantly less than reflected in its purchase price.

30.     By and through the deceptive practices described herein, Support.com has profited, and continues to profit, by defrauding consumers into believing that their computers are severely damaged and/or at risk, and that a purchased, registered version of the Software is necessary to "fix" these problems. This induces the consumer to purchase the Software because he or she reasonably believes that the software is performing the beneficial tasks as represented by Defendants—something the Software does not do.

**IV.     Plaintiff James LaGarde's Experience**

31.     In or around April 2011, Plaintiff James LaGarde performed an Internet search for software that would enhance the performance of his computer. LaGarde clicked on a link for ARO purporting to offer a free trial of the software, including a free diagnostic scan of his computer. LaGarde downloaded and installed the trial version of ARO and then performed the free diagnostic scan.

32.     After completing the scan, the software represented that LaGarde's computer's "Security Status" was "CRITICAL," and that its "Junk Status" was high. After clicking a "Fix Errors" button to fix the reported problems, a display box informed LaGarde that only some of the errors would be fixed with the trial version of the software and that he must purchase a full version to fix all of the detected issues.

33.     However, as discussed above, ARO did not actually detect that LaGarde's computer's security status was critical or that junk files were harming his computer. Rather, because ARO was designed to always return these results, LaGarde was misled into believing that his computer was at-risk and that he needed to pay for ARO to repair it.

34.     Thus, in reliance on the representations made by the software regarding the health and performance of his PC, LaGarde clicked on the "Buy & Download" button within the software and was directed to a website where he paid, and Support.com accepted, $29.95 for the purchase of ARO.

35.     But for Support.com's misrepresentations displayed within the Advanced Registry Optimizer software—namely that (i) the software would accurately detect, report, and repair harmful errors and other problems, (ii) that his computer's "Junk Status" was high, (iii) that his computer had several hundred "Registry Status" errors, and (iv) that his computer's "Security Status" was "CRITICAL"—LaGarde would not have agreed to purchase ARO.

**V.     Plaintiff Tim Batchelor's Experience**

36.     In or about November 2011, Plaintiff Batchelor viewed Defendant AOL's homepage, where Defendant AOL represented that its Computer Checkup software would accurately identify, report, and repair a variety of computer errors and other problems, and would enhance the performance, speed, and security of his computer.

37.     After reading AOL's representations on its website regarding the utility of the Computer Checkup software, Batchelor clicked on a link to download and install a free 30-day trial of the software.

38.     Batchelor relied upon the representations made by AOL on its website about the utility and functionality of the Computer Checkup software. In particular, Batchelor reasonably believed that Computer Checkup would accurately identify, report, and repair harmful computer errors, spyware, viruses, and privacy/security risks, and improve the overall performance of his computer. As a result, Batchelor downloaded and installed the free trial of the Computer Checkup

1   software.

2        39.     Thereafter, Batchelor performed the software's free diagnostic scan. After the "scan"

3   was performed, the software stated that Batchelor's computer had numerous errors, that his

4   computer's "System Status," "Security," and "Clean[liness]," were "poor," and that his computer

5   needed "Optimization."

6        40.     Relying upon AOL's representations regarding the functionality and utility of the

7   Computer Checkup software, as well as the software's representations that his computer was in

8   serious need of repair, Batchelor continued using the software beyond the free-trial period and was

9   charged by Defendant AOL as a result.

10        41.     In reality, the errors "detected" by the software did not exist and/or did not pose a

11   risk to the performance of Batchelor's computer and his "System Status" and "Optimization" levels

12   were not actually "poor."

13        42.     But for Defendant AOL's misrepresentations on its website regarding the utility of

14   the Computer Checkup software, Plaintiff would not have downloaded, installed, and operated the

15   free version of the software on his computer. Likewise, but for Support.com's misrepresentations

16   displayed within the Computer Checkup software itself—namely, that his computer's "System

17   Status," "Security," and "Clean[liness]," were "poor"— Batchelor would not have agreed to pay the

18   recurring monthly fees charged by Defendant AOL for use of the software beyond the free trial

19   period.

20                                  **CLASS ALLEGATIONS**

21        43.     **Definition of the Class:** Plaintiffs bring this action pursuant to Fed. R. Civ. P.

22   23(b)(2) and (b)(3) on behalf of themselves and a class (the "Class") of similarly situated

23   individuals, defined as follows:

24        All individuals and entities in the United States and its territories that paid a fee to
          purchase the ARO or Computer Checkup software.
25

26   Excluded from the Class are (1) Defendants, Defendants' agents, subsidiaries, parents, successors,

27   predecessors, and any entity in which Defendants or their parents have a controlling interest and

28

---

their current and former employees, officers, and directors, (2) the Judge or Magistrate Judge to whom this case is assigned and the Judge's or Magistrate Judge's immediate family, (3) persons who execute and file a timely request for exclusion, (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released, and (5) the legal representatives, successors, or assigns of any such excluded person.

44.     **Numerosity:** On information and belief, Defendants have sold the Software to thousands of Class members throughout the country, making joinder of each individual member impracticable. Ultimately, the Class members will be easily identified from within Defendants' records.

45.     **Typicality:** Plaintiffs' claims are typical of the claims of the other members of the Class. Plaintiffs and the Class sustained damages as a result of Defendants' uniform wrongful conduct during transactions with Plaintiffs and the Class.

46.     **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the Class and have retained counsel competent and experienced in complex litigation and class actions. Plaintiffs have no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Class.

47.     **Commonality and Predominance:** Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual members. Those questions include, but are not necessarily limited to:

a)     whether Support.com intentionally designed the Software to artificially inflate, exaggerate, and/or misrepresent the existence of errors and other problems on a user's computer;

b)     whether the Software actually repairs computers errors and problems, or

improves computer speed and functionality;

    c)    whether Defendants' conduct described herein constitutes a breach of express warranties;

    d)    whether Defendants' conduct described herein constitutes fraudulent inducement; and

    f)    whether Defendants' conduct described herein constitutes a breach of contract.

48.    **Superiority:** Class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, as joinder of all Class members is impracticable. The damages suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendants' misconduct on an individual basis. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

49.    **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendants' policies challenged herein apply and affect members of the Class uniformly and Plaintiffs' challenge of these policies hinges on Defendants' conduct with respect to the Class as a whole, not on facts or law applicable only to Plaintiffs.

50.     Plaintiffs reserve the right to revise the foregoing "Class Allegations" and "Class Definition" based on facts learned in discovery.

### FIRST CAUSE OF ACTION
**Breach of Contract**
**(On Behalf of Plaintiffs and the Class)**

51.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

52.     Plaintiffs and each member of the Class, on the one hand, and Defendants, on the other, entered into valid and enforceable agreements, whereby Defendants agreed to sell, and Plaintiffs and the Class agreed to purchase, software that would accurately identify, report, and repair legitimate computer errors and other problems found on Plaintiffs' and the Class's computers and otherwise perform the beneficial tasks described in Paragraphs 16 and 17 above.

53.     Furthermore, Defendant Support.com's End User License Agreement ("EULA") promises, in part, "if you acquire a license for the full retail version of ARO, it will contain full functionality." Presumably the term "full functionality" referenced in the EULA refers to the software's ability to perform the operations described in Paragraph 74 above.

54.     Plaintiffs and the Class paid, and Defendants accepted, the purchase price of the software products at issue. Therefore, Plaintiffs and the Class performed their obligations under the contracts.

55.     The actual utility of the Software was a material term in the agreements at issue.

56.     Defendants expressly and/or impliedly agreed to provide Plaintiffs and the Class a product that would accurately identify, report, and repair errors and other problems on their computers and otherwise perform the beneficial tasks described in Paragraphs 16 and 17 above.

57.     Defendants further expressly and/or impliedly agreed to carry out their obligations under the agreement with good faith and fair dealing.

58.     Defendants materially breached their agreements with Plaintiffs and the Class by providing them software that Support.com intentionally designed to misrepresent and exaggerate

the existence of errors and other problems on their computers and that ultimately did not have the

utility that Defendants represented it to have.

59.     As a direct and proximate result of Defendants' breach of its contractual relationships

with Plaintiffs and the Class, Plaintiffs and the Class suffered damages, including in the form of the

monies they paid to purchase the Software.

60.     Accordingly, Plaintiffs, on behalf of themselves and the other members of the Class,

seek an award of the maximum damages available in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranties**
**Pursuant to U.C.C. § 2**
**(On Behalf of Plaintiffs and the Class)**

61.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth

herein.

62.     Licenses for the Software are "goods" within the meaning of the Uniform

Commercial Code § 2, including but not limited to Cal. Com. Code § 2313.

63.     Pursuant to the Uniform Commercial Code § 2, including but not limited to Cal.

Com. Code § 2313, sales of the Software were accompanied by express warranties of

merchantability created by affirmations of facts and promises made by Defendants.

64.     The express warranties of merchantability provided by Defendants included

affirmations of fact and promises that the Software would accurately identify, report, and repair PC

errors and other problems, increase computer speed, performance, and stability, remove harmful

errors, and include the assertions described in Paragraphs 16 and 17 above. In actuality,

Support.com fraudulently designed the Software to falsely identify and/or exaggerate the presence

of harmful errors and misrepresented the overall health and security of Plaintiffs' and the Class's

computers in an effort to induce them to purchase the registered version of the software.

Defendants' misrepresentations were made in a substantially identical manner to Plaintiffs and the

other members of the Class.

65.     Plaintiffs and the Class uniformly and reasonably relied upon these affirmations and

promises when purchasing Defendants' Software, in that Plaintiffs and the Class reasonably believed that they were purchasing software that would accurately identify, report, and repair PC errors and security and privacy risks, increase computer speed, performance and stability, remove harmful errors, and perform beneficial tasks such as those described in Paragraphs 16 and 17. As such, Defendants' affirmations and promises were part of the money-for-software bargain.

66.     But for Defendants' affirmations and promises, Plaintiffs and the Class would not have purchased the Software.

67.     Defendants breached their express warranties by intentionally designing the Software to falsely identify, artificially inflate, and/or exaggerate the presence of harmful errors, and the overall security of a consumer's computer.

68.     Defendants' breach directly injured Plaintiffs and the Class because they purchased a product of diminished value—software that does not accurately detect, report, and repair errors and other problems on a user's computer.

69.     At all times, Defendants were on notice that they had breached their express warranties made to Plaintiffs and the Class, inasmuch as Defendant Support.com intentionally designed the Software to falsely identify and/or exaggerate the presence of harmful errors, and the overall health and security of their computers, and therefore knew that the software did not meet its warranties to the contrary. Likewise, Defendants knew, or should have known, that their representations about the Software's utility were false or misleading.

70.     Accordingly, Plaintiffs, on behalf of themselves and the other members of the Class, seek an award of the maximum damages available, together with costs and reasonable attorneys' fees, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**Fraudulent Inducement**
**(On Behalf of Plaintiffs and the Class)**

71.     Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

55.     As described with particularity herein, Defendants have used, and continue to use, marketing and sales tactics that they know or reasonably should know are false and misleading.

56.     As an inducement for Plaintiffs and the other members of the Class to purchase the Software, Defendants affirmatively and uniformly represented to them that the software would perform the beneficial functions described in Paragraphs 16 and 17 and throughout this Complaint. Furthermore, within the Software itself, Support.com affirmatively represented that the overall health of Plaintiffs' and the Class's computers was poor.

57.     The above affirmative representations were, in fact, false. In particular, the Software did not accurately identify and report errors and other problems present on Plaintiffs' and the Class's computers, inasmuch as the Software was actually designed to and did exaggerate and misrepresent the existence and severity of any such errors.

58.     Likewise, because the errors and problems identified by the Software either did not actually exist or were not as severe as the Software represented them to be, the Software did not (and cannot) repair such errors or actually improve the performance of Plaintiffs' and the Class's computers in the manner that Defendants represented that it would.

59.     Defendants knew that their representations regarding the Software's utility and functionality as well as Support.com's representations about the condition of Plaintiffs' and the Class's computers were fabricated or vastly overstated.

60.     Defendants intended that Plaintiffs and the other members of the Class would rely upon their misrepresentations about the Software, as well as the software's misrepresentations regarding the health of their computers, and purchase and continue to use the Software.

61.     Plaintiffs and the other members of the Class reasonably relied upon those misrepresentations inasmuch as they believed that the Software was designed to accurately identify, report, and repair errors and other problems on their computers as represented by Defendants through their assertions described in Paragraphs 16 and 17 above; they reasonably believed that the Software had, in fact, accurately identified and reported errors and other problems on their

1  computers; and they remitted payment for the purchase of a full version of the Software in order to

2  repair the purported errors and other problems "detected" on their computers.

3        62.    The utility of a consumer product is a material term of any transaction because it

4  directly affects a consumer's choice of, or conduct regarding, whether to purchase a product. Any

5  deception or fraud related to the utility of a product is materially misleading. Accordingly,

6  Defendants' misrepresentations regarding the Software's utility were materially misleading.

7        63.    Plaintiffs and the other members of the Class would not have purchased the Software

8  if not for Defendants' misrepresentations regarding its utility and/or the misrepresentations within

9  the software itself regarding the health of their computers. Further, if not for Defendant

10 Support.com's in-software misrepresentations, Plaintiffs and the Class would have discontinued

11 their use of the Software or requested a refund.

12       64.    As a result of Defendants' fraudulent conduct described herein, Plaintiffs and the

13 Class suffered injury in the form of the monies they paid Defendants for the purchase of the full

14 version of the Software.

15       65.    Accordingly, Plaintiffs on behalf of themselves and the other members of the Class,

16 seek an award of the maximum damages available in an amount to be determined at trial.

**PRAYER FOR RELIEF**

18       WHEREFORE, Plaintiffs James LaGarde and Tim Batchelor, on behalf of themselves and

19 the Class, respectfully request that this Court enter an Order:

20       A.     Certifying this case as a class action on behalf of the Class defined above, appointing

21 James LaGarde and Tim Batchelor as Class Representatives, and appointing their counsel Class

22 Counsel;

23       B.     Declaring that Defendants' actions, as set out above, constitute violations of the

24 Uniform Commercial Code § 2, including but not limited to California Commercial Code §§ 2313

25 and 2314, as well as fraudulent inducement and breach of contract;

26       C.     Awarding damages, including actual, statutory, and punitive damages where

27

28

1  applicable, to Plaintiffs and the Class in an amount to be determined at trial;

2      D.      Awarding injunctive and other equitable relief as is necessary to protect the interests

3  of Plaintiffs and the Class, including, *inter alia*: (i) prohibiting Defendants from engaging in the

4  wrongful and unlawful acts described herein; (ii) requiring Defendants to disclose and admit the

5  wrongful and unlawful acts described herein; and (iii) requiring Defendants to fully disclose the

6  true nature of its software products now and in the future;

7      E.      Awarding restitution and disgorging all monies unlawfully retained by Defendants as

8  a result of its conduct described herein;

9      F.      Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys'

10  fees;

11      G.      Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent

12  allowable; and

13      H.      Awarding such other and further relief as the Court deems equitable and just.

14                          **DEMAND FOR JURY TRIAL**

15      Plaintiffs demand a trial by jury of all issues so triable.

16                                  Respectfully submitted,

17  Date:  August 6, 2012                    **JAMES LAGARDE** and **TIM BATCHELOR**,
                                            individually and on behalf of all others similarly
18                                          situated,

19                                  By: /s/ Benjamin H. Richman
                                        One of Plaintiffs' Attorneys
20

21                                  SEAN P. REIS (SBN 184044)
                                    sreis@edelson.com
22                                  EDELSON MCGUIRE, LLP
                                    30021 Tomas Street, Suite 300
23                                  Rancho Santa Margarita, California 92688
                                    Telephone: (949) 459-2124
24                                  Facsimile: (949) 459-2123

25

26

27

28

JAY EDELSON (Admitted *Pro Hac Vice*)
jedelson@edelson.com
RAFEY S. BALABANIAN (Admitted *Pro Hac Vice*)
rbalabanian@edelson.com
BENJAMIN H. RICHMAN (Admitted *Pro Hac Vice*)
brichman@edelson.com
CHANDLER R. GIVENS (Admitted *Pro Hac Vice*)
cgivens@edelson.com
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone: (312) 589-6370
Facsimile: (312) 589-6378

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### CERTIFICATE OF SERVICE

I, Benjamin H. Richman, an attorney, hereby certify that on August 6, 2012, I served the above and foregoing ***Second Amended Class Action Complaint***, by causing true and accurate copies of such paper to be filed and served on all counsel of record via the Court's CM/ECF electronic filing system, on this the 6th day of August 2012.

/s/ Benjamin H. Richman
Benjamin H. Richman