1

2

3

4

5

6

7

8

9

10

United States District Court
Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

12

13

14

15

16

17

JAMES LAGARDE, et al.,

                  Plaintiffs,

       v.

SUPPORT.COM, INC., et al.,

                Defendants.

Case No.: 12-0609 JSC

**ORDER GRANTING MOTION FOR
FINAL APPROVAL OF CLASS ACTION
SETTLEMENT AND MOTION FOR
ATTORNEYS' FEES, EXPENSES, AND
COLLECTIVE INCENTIVE AWARD**

18

19

20

21

22

23

24

     In this pre-certification class action dispute, Plaintiffs allege Defendants induced the purchase of two computer performance products through misrepresentations about the status of potential customers' computers and the products' utility.  Now pending before the Court are Plaintiffs' motion for final approval of a class action settlement (Dkt. No. 53), and Plaintiffs' unopposed motion for attorneys' fees and collective incentive award (Dkt. No. 51).  Having carefully considered the parties' submissions, and having had the benefit of oral argument on March 21, 2013, the Court GRANTS the motions.

25

                       **BACKGROUND**

26

27

28

     On February 7, 2012, Plaintiff James LaGarde initiated this action against Defendants after purchasing Defendants' Advanced Registry Optimizer ("ARO") software.  Plaintiff Tim Batchelor, who purchased AOL Computer Checkup ("Checkup") software, joined the case on August 6, 2012

United States District Court
Northern District of California

1  through the Second Amended Complaint.  Batchelor initially brought suit in the Southern District of

2  New York (No. 1:12-cv-00963-JSR) "against AOL and a now dissolved subsidiary of Support.com

3  related to the alleged deceptive design and marketing of the Computer Checkup software" but

4  voluntarily dismissed that pending action because "a great deal of the evidence relevant to his claims

5  was in [Defendants'] possession in San Francisco."  (Dkt. No. 53 at 4-5.)

6          Plaintiffs bring three causes of action against Defendants in the Second Amended Complaint:

7  1) fraudulent inducement, 2) breach of express warranties, and 3) breach of contract.  (Dkt. No. 39

8  ¶¶ 51-65.)  Plaintiffs allege that Defendants' inaccurate statements about the ability of ARO and

9  Checkup to enhance the speed, performance, and stability of personal computers induced customers

10  to purchase these products at a price inflated by Defendants' false claims of value.  (*Id.* ¶¶ 1-2, 5.)

11  According to Plaintiffs, Defendants 1) provided potential customers with a free diagnostic scan

12  designed "to misrepresent and exaggerate the existence and severity of detected errors, as well as the

13  overall status of the PC" and 2) misled all customers, even those who did not use the free scan prior

14  to purchase, about the services actually provided by ARO and Checkup.  (*Id.* ¶¶ 1-5.)  Some

15  customers, including Plaintiffs, purchased ARO for approximately $29 or paid approximately $4.99

16  per month for a subscription to Checkup based on misrepresentations about "the purported low

17  health and security status of their computer."  (Dkt. No. 53 at 3-4.)

18                                **SETTLEMENT PROPOSAL**

19          On June 18, 2012, the parties met for a private mediation session with experienced neutral

20  Randall Wulff, which resulted in an agreement in principle as to the primary terms of a class wide

21  settlement.  On November 2, 2012, the Court conditionally approved the class and preliminarily

22  approved the settlement.  The settlement class conditionally approved comprises: "All individuals

23  and entities in the United States and its territories that have paid monies for any version of

24  Defendants' Advanced Registry Optimizer and/or Computer Checkup software at any time until the

25  date of this Preliminary Approval Order."  (*Id.* at 3.)  There are approximately 759,000 class

26  members.

27          The settlement as it existed prior to the final approval hearing provides for 1)

28  improvements to ARO and Checkup and their representations of functionality; 2) monetary relief for

1    class members through a non-segregated $8,595,000 settlement fund to pay claims to class members

2    in the amount of $10 each, notice and administration expenses up to $100,000, a $5,000 collective

3    incentive award to LaGarde and Batchelor, and attorneys' fees and reimbursement expenses up to

4    $900,000 for this action and the previous Batchelor matter; and 3) three months of free access to

5    Defendants' anti-spyware software valued at $7.50 for each class member.  The parties also agreed

6    that half of the refunds Defendants have paid to purchasers of ARO and Checkup prior to the Claims

7    Deadline will be applied against the Settlement Fund.[1]

8        With respect to the injunctive relief, Support.com has agreed to modify the source code of its

9    ARO software to:

10       (i) create a clear visual distinction between the "Junk Status" and "Security Status"
        reporting functions within the main Graphical User Interface ("GUI") displayed to
11       users following the performance of a diagnostic scan, so that it is apparent that such
        reports correspond with the detection of distinct error types, and (ii) include active links
12       within the software's GUI that, upon clicking, redirect the user to a display screen (or
        website) containing documentation that clearly explains the detection and reporting
13       methodologies underlying the operations of ARO's diagnostic scan.

14

15   (Dkt. No. 53 at 7.)  Defendants have also agreed to modify Checkup's source code to "include active

16   links within the software's GUI that, upon clicking, redirect the user to a display screen (or website)

17   that contains documentation clearly explaining the detection and reporting methodologies underlying

18   the operations of Computer Checkup's diagnostic scan."  (*Id.*)

19       In addition, Defendants will create documentation for both products that explains, "in a clear

20   and concise manner," the meaning of key terms generated by the products upon completion of a

21   diagnostic scan.  (*Id.*)   Further, the documentation shall describe, "in layman's terms, the actual risk

22   to [consumers'] computers posed by the errors and other problems detected by the software that

23   informed such reports."  (*Id.*)

24       Support.com will take the above actions as soon as practicable, but in no event later than 14

25   days after effective date of the settlement.  (*See* Dkt. No. 53, Ex. 1 § VI.)  The parties have also

26   _____

27       [1]  In granting preliminary approval, the Court found that the refund amount is minimal given
        that the class size is approximately 759,000 and, as of October 19, 2012, Defendants had paid
28       $245,000 in refunds, $122,500 of which would be deducted from the $8,595,000 settlement fund.
        (Dkt. No. 50 at 12-13.) The remaining funds are more than sufficient to fully satisfy each claim made.

1    included an addendum to the settlement that provides an enforcement mechanism for the injunctive

2    relief; namely, that "any non-breaching party shall be entitled to bring an action seeking to enforce"

3    and can recover attorneys' fees if successful.  (Dkt. No. 53, Ex. 1, Addendum at § III.K.)

### RESPONSE TO CLASS NOTICE

5    Notice to the class was delivered via e-mail, reaching more than 92% of the 759,000 class

6    members' email addresses.  (Dkt. No. 53 at 10.)  No class member has objected to the settlement,

7    and only three class members have sought exclusion.  (*Id.* at 19.)  However, a mere 1,259 timely

8    claims were submitted for the $10 refund, which represents 0.17% of the total number of class

9    members and 0.18% of the total number of class members who received notice.  (Dkt. No. 56, Ex.

10   2.)

### MODIFICATION OF SETTLEMENT TERMS

12   At the hearing on Plaintiffs' motions, and in response to concerns expressed by the Court in

13   light of the anemic claim rate, Plaintiffs offered, and Defendants did not oppose, that $200,000

14   would be deducted from the attorney's fee request and directed to a yet-to-be-named *cy pres*

15   account.  The Court also suggested that the settlement should be modified such that those class

16   members who made claims would now receive $25 each, rather than $10.  Plaintiffs agreed to the

17   modification and Defendants did not oppose it.  This additional $18,885 in class awards would also

18   be deducted from the uncontested fee request.

19   Following the hearing, Plaintiffs submitted their proposed recipients of the *cy pres* account.

20   (*See* Dkt. No. 59.)  The two proposed recipients, receiving $100,000 each, are Consumer Watchdog

21   and the Electronic Frontier Foundation ("EFF").  Plaintiffs' *cy pres* proposal is unopposed.

### DISCUSSION

23   In its previous Order, the Court analyzed the fairness of the proposed settlement as modified,

24   and found that it satisfied the factors set out in *Churchill Village, L.L.C. v. General Electric*, 361

25   F.3d 566, 575 (9th Cir. 2004) and *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d

26   935, 946 (9th Cir. 2011).  (*See* Dkt. No. 58.)  The Court, however, could not make a final fairness

27

28

United States District Court
Northern District of California

4

United States District Court
Northern District of California

1   determination until it received notice of the proposed *cy pres* recipients and considered whether the

2   *cy pres* distribution met the relevant requirements.[2]   The Court concludes that it does.

3         "[A] district court should not approve a *cy pres* distribution unless it bears a substantial nexus

4   to the interests of the class members," that is, "the *cy pres* remedy must account for the nature of the

5   plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class

6   members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (en banc) (internal quotation

7   marks omitted).

8         The distribution to Consumer Watchdog and EFF bears a substantial nexus to the interests of

9   the class members.  Consumer Watchdog is a national nonprofit organization dedicated to educating

10  and advocating on behalf of consumers "through policy research, investigation, public education,

11  advocacy (including litigation), and direct consumer outreach."  (Dkt. No. 59-1.)  Consumer

12  Watchdog will use the funds in the settlement to continue its work in "expos[ing] and stop[ing] fraud

13  by technology and software companies."  (*Id.*)  Specifically, Consumer Watchdog intends to use the

14  distribution to (i) hire additional staff to allow better representation in front of regulatory bodies

15  related to consumer rights in technology and software purchases, (ii) file three petitions with

16  regulatory bodies seeking to advance consumer rights in such purchases, and (iii) continue its

17  research and publication efforts related to such issues, including in-depth reports, online

18  publications, and national media campaigns.  Consumer Watchdog's activities and purpose are

19  directed towards the nature and objective of this action—consumer protection.  Further, distributing

20  a portion of the *cy pres* account to Consumer Watchdog will meet the interests of the silent class

21  members because the organization will use the funds to help protect consumers across the nation

22  from being subject to the types of fraudulent and misleading conduct that is alleged here.

23        EFF focuses on "protecting technology consumers and advanc[ing] their digital rights."

24  (Dkt. No. 59-2.)  EFF intends to use the *cy pres* funds "to continue the important work of building a

25  _____

26  [2]  The Court did conclude that, in general, a *cy pres* fund was appropriate in this case since for
    practical reasons the $200,000 can be considered an "unclaimed" portion of the settlement fund.  (*See*
    Dkt. No. 58 at 9); *see also Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *4 (N.D. Cal. Feb.

27  6, 2012) (finding that *cy pres* account created after claim period constituted "unclaimed" funds, as a
    practical matter, because if the account were distributed to the class, the additional payment would not

28  be large enough to convince the vast majority of class members to make a claim).

                                        5

United States District Court
Northern District of California

1  better digital future for consumers, particularly with regards to limiting the harm of lopsided terms of

2  service agreements, surfacing inexplicit company policies around data, and ownership of digital

3  goods and devices." (*Id.*)  As with Consumer Watchdog, EFF's mission includes a strong consumer

4  protection component, especially in regards to online protection.  In addition, class members will

5  receive an indirect benefit from EFF's receipt of the funds because the money will help grow EFF's

6  consumer education efforts and EFF's advocacy for greater online consumer protection, including

7  more transparent terms of service, which is an issue in this action.

8                                                    **CONCLUSION**

9            Because the Court concludes that the *cy pres* distribution bears a substantial nexus to the

10  interests of the class members, and because this Court concluded in its previous Order that the

11  modified settlement was otherwise fair, adequate, and reasonable, the Court GRANTS Plaintiffs'

12  motion for final approval.  For the reasons stated in its previous Order, the Court further GRANTS

13  Plaintiffs' motion for attorney's fees, expenses, and incentive award, as previously modified by the

14  parties.

15            In addition, the Court orders the parties to submit a revised proposed judgment, within 14

16  days of the date of this Order, that reflects the settlement as modified and approved.

17            This Order disposes of docket numbers 51 and 53.

18

19            **IT IS SO ORDERED.**

20

21  Dated:  May 13, 2013                          _____

22                                                              JACQUELINE SCOTT CORLEY
                                                                  UNITED STATES MAGISTRATE JUDGE
23

24

25

26

27

28