IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES LAGARDE, et al.,<br><br>                    Plaintiffs,<br><br>     v.<br><br>SUPPORT.COM, INC., et al.,<br><br>                    Defendants. | Case No.: 12-0609 JSC<br><br>**ORDER GRANTING MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR ATTORNEYS' FEES, EXPENSES, AND COLLECTIVE INCENTIVE AWARD** |

In this pre-certification class action dispute, Plaintiffs allege Defendants induced the purchase of two computer performance products through misrepresentations about the status of potential customers' computers and the products' utility. Now pending before the Court are Plaintiffs' motion for final approval of a class action settlement (Dkt. No. 53), and Plaintiffs' unopposed motion for attorneys' fees and collective incentive award (Dkt. No. 51). Having carefully considered the parties' submissions, and having had the benefit of oral argument on March 21, 2013, the Court GRANTS the motions.

## BACKGROUND

On February 7, 2012, Plaintiff James LaGarde initiated this action against Defendants after purchasing Defendants' Advanced Registry Optimizer ("ARO") software. Plaintiff Tim Batchelor, who purchased AOL Computer Checkup ("Checkup") software, joined the case on August 6, 2012

through the Second Amended Complaint. Batchelor initially brought suit in the Southern District of New York (No. 1:12-cv-00963-JSR) "against AOL and a now dissolved subsidiary of Support.com related to the alleged deceptive design and marketing of the Computer Checkup software" but voluntarily dismissed that pending action because "a great deal of the evidence relevant to his claims was in [Defendants'] possession in San Francisco." (Dkt. No. 53 at 4-5.)

Plaintiffs bring three causes of action against Defendants in the Second Amended Complaint: 1) fraudulent inducement, 2) breach of express warranties, and 3) breach of contract. (Dkt. No. 39 ¶¶ 51-65.) Plaintiffs allege that Defendants' inaccurate statements about the ability of ARO and Checkup to enhance the speed, performance, and stability of personal computers induced customers to purchase these products at a price inflated by Defendants' false claims of value. (*Id.* ¶¶ 1-2, 5.) According to Plaintiffs, Defendants 1) provided potential customers with a free diagnostic scan designed "to misrepresent and exaggerate the existence and severity of detected errors, as well as the overall status of the PC" and 2) misled all customers, even those who did not use the free scan prior to purchase, about the services actually provided by ARO and Checkup. (*Id.* ¶¶ 1-5.) Some customers, including Plaintiffs, purchased ARO for approximately $29 or paid approximately $4.99 per month for a subscription to Checkup based on misrepresentations about "the purported low health and security status of their computer." (Dkt. No. 53 at 3-4.)

**SETTLEMENT PROPOSAL**

On June 18, 2012, the parties met for a private mediation session with experienced neutral Randall Wulff, which resulted in an agreement in principle as to the primary terms of a class wide settlement. On November 2, 2012, the Court conditionally approved the class and preliminarily approved the settlement. The settlement class conditionally approved comprises: "All individuals and entities in the United States and its territories that have paid monies for any version of Defendants' Advanced Registry Optimizer and/or Computer Checkup software at any time until the date of this Preliminary Approval Order." (*Id.* at 3.) There are approximately 759,000 class members.

The settlement as it existed prior to the final approval hearing provides for 1) improvements to ARO and Checkup and their representations of functionality; 2) monetary relief for

1  class members through a non-segregated $8,595,000 settlement fund to pay claims to class members
2  in the amount of $10 each, notice and administration expenses up to $100,000, a $5,000 collective
3  incentive award to LaGarde and Batchelor, and attorneys' fees and reimbursement expenses up to
4  $900,000 for this action and the previous Batchelor matter; and 3) three months of free access to
5  Defendants' anti-spyware software valued at $7.50 for each class member.  The parties also agreed
6  that half of the refunds Defendants have paid to purchasers of ARO and Checkup prior to the Claims
7  Deadline will be applied against the Settlement Fund.[1]

8  With respect to the injunctive relief, Support.com has agreed to modify the source code of its
9  ARO software to:

> (i) create a clear visual distinction between the "Junk Status" and "Security Status" reporting functions within the main Graphical User Interface ("GUI") displayed to users following the performance of a diagnostic scan, so that it is apparent that such reports correspond with the detection of distinct error types, and (ii) include active links within the software's GUI that, upon clicking, redirect the user to a display screen (or website) containing documentation that clearly explains the detection and reporting methodologies underlying the operations of ARO's diagnostic scan.

15  (Dkt. No. 53 at 7.)  Defendants have also agreed to modify Checkup's source code to "include active
16  links within the software's GUI that, upon clicking, redirect the user to a display screen (or website)
17  that contains documentation clearly explaining the detection and reporting methodologies underlying
18  the operations of Computer Checkup's diagnostic scan."  (*Id.*)

19  In addition, Defendants will create documentation for both products that explains, "in a clear
20  and concise manner," the meaning of key terms generated by the products upon completion of a
21  diagnostic scan.  (*Id.*)   Further, the documentation shall describe, "in layman's terms, the actual risk
22  to [consumers'] computers posed by the errors and other problems detected by the software that
23  informed such reports."  (*Id.*)

24  Support.com will take the above actions as soon as practicable, but in no event later than 14
25  days after effective date of the settlement.  (*See* Dkt. No. 53, Ex. 1 § VI.)  The parties have also

---

[1] In granting preliminary approval, the Court found that the refund amount is minimal given that the class size is approximately 759,000 and, as of October 19, 2012, Defendants had paid $245,000 in refunds, $122,500 of which would be deducted from the $8,595,000 settlement fund. (Dkt. No. 50 at 12-13.) The remaining funds are more than sufficient to fully satisfy each claim made.

included an addendum to the settlement that provides an enforcement mechanism for the injunctive relief; namely, that "any non-breaching party shall be entitled to bring an action seeking to enforce" and can recover attorneys' fees if successful. (Dkt. No. 53, Ex. 1, Addendum at § III.K.)

### RESPONSE TO CLASS NOTICE

Notice to the class was delivered via e-mail, reaching more than 92% of the 759,000 class members' email addresses. (Dkt. No. 53 at 10.) No class member has objected to the settlement, and only three class members have sought exclusion. (*Id.* at 19.) However, a mere 1,259 timely claims were submitted for the $10 refund, which represents 0.17% of the total number of class members and 0.18% of the total number of class members who received notice. (Dkt. No. 56, Ex. 2.)

### MODIFICATION OF SETTLEMENT TERMS

At the hearing on Plaintiffs' motions, and in response to concerns expressed by the Court in light of the anemic claim rate, Plaintiffs offered, and Defendants did not oppose, that $200,000 would be deducted from the attorney's fee request and directed to a yet-to-be-named *cy pres* account. The Court also suggested that the settlement should be modified such that those class members who made claims would now receive $25 each, rather than $10. Plaintiffs agreed to the modification and Defendants did not oppose it. This additional $18,885 in class awards would also be deducted from the uncontested fee request.

Following the hearing, Plaintiffs submitted their proposed recipients of the *cy pres* account. (*See* Dkt. No. 59.) The two proposed recipients, receiving $100,000 each, are Consumer Watchdog and the Electronic Frontier Foundation ("EFF"). Plaintiffs' *cy pres* proposal is unopposed.

### DISCUSSION

In its previous Order, the Court analyzed the fairness of the proposed settlement as modified, and found that it satisfied the factors set out in *Churchill Village, L.L.C. v. General Electric*, 361 F.3d 566, 575 (9th Cir. 2004) and *In re Bluetooth Headset Products Liability Litigation*, 654 F.3d 935, 946 (9th Cir. 2011). (*See* Dkt. No. 58.) The Court, however, could not make a final fairness

4

1 determination until it received notice of the proposed *cy pres* recipients and considered whether the
2 *cy pres* distribution met the relevant requirements.[2]  The Court concludes that it does.

3  "[A] district court should not approve a *cy pres* distribution unless it bears a substantial nexus
4 to the interests of the class members," that is, "the *cy pres* remedy must account for the nature of the
5 plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class
6 members." *Lane v. Facebook, Inc.*, 696 F.3d 811, 821 (9th Cir. 2012) (en banc) (internal quotation
7 marks omitted).

8  The distribution to Consumer Watchdog and EFF bears a substantial nexus to the interests of
9 the class members.  Consumer Watchdog is a national nonprofit organization dedicated to educating
10 and advocating on behalf of consumers "through policy research, investigation, public education,
11 advocacy (including litigation), and direct consumer outreach."  (Dkt. No. 59-1.)  Consumer
12 Watchdog will use the funds in the settlement to continue its work in "expos[ing] and stop[ping] fraud
13 by technology and software companies."  (*Id.*)  Specifically, Consumer Watchdog intends to use the
14 distribution to (i) hire additional staff to allow better representation in front of regulatory bodies
15 related to consumer rights in technology and software purchases, (ii) file three petitions with
16 regulatory bodies seeking to advance consumer rights in such purchases, and (iii) continue its
17 research and publication efforts related to such issues, including in-depth reports, online
18 publications, and national media campaigns.  Consumer Watchdog's activities and purpose are
19 directed towards the nature and objective of this action—consumer protection.  Further, distributing
20 a portion of the *cy pres* account to Consumer Watchdog will meet the interests of the silent class
21 members because the organization will use the funds to help protect consumers across the nation
22 from being subject to the types of fraudulent and misleading conduct that is alleged here.

23  EFF focuses on "protecting technology consumers and advanc[ing] their digital rights."
24 (Dkt. No. 59-2.)  EFF intends to use the *cy pres* funds "to continue the important work of building a

---

[2] The Court did conclude that, in general, a *cy pres* fund was appropriate in this case since for practical reasons the $200,000 can be considered an "unclaimed" portion of the settlement fund. (*See* Dkt. No. 58 at 9); *see also Harris v. Vector Marketing Corp.*, 2012 WL 381202, at *4 (N.D. Cal. Feb. 6, 2012) (finding that *cy pres* account created after claim period constituted "unclaimed" funds, as a practical matter, because if the account were distributed to the class, the additional payment would not be large enough to convince the vast majority of class members to make a claim).

better digital future for consumers, particularly with regards to limiting the harm of lopsided terms of service agreements, surfacing inexplicit company policies around data, and ownership of digital goods and devices." (*Id.*) As with Consumer Watchdog, EFF's mission includes a strong consumer protection component, especially in regards to online protection. In addition, class members will receive an indirect benefit from EFF's receipt of the funds because the money will help grow EFF's consumer education efforts and EFF's advocacy for greater online consumer protection, including more transparent terms of service, which is an issue in this action.

## CONCLUSION

Because the Court concludes that the *cy pres* distribution bears a substantial nexus to the interests of the class members, and because this Court concluded in its previous Order that the modified settlement was otherwise fair, adequate, and reasonable, the Court GRANTS Plaintiffs' motion for final approval. For the reasons stated in its previous Order, the Court further GRANTS Plaintiffs' motion for attorney's fees, expenses, and incentive award, as previously modified by the parties.

In addition, the Court orders the parties to submit a revised proposed judgment, within 14 days of the date of this Order, that reflects the settlement as modified and approved.

This Order disposes of docket numbers 51 and 53.

**IT IS SO ORDERED.**

Dated: May 13, 2013

JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE